UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 10-61451-CV-GRAHAM/Torres

ELIZABETH ZILINSKY as parent
and natural guardian of
ASHLEY ZILINSKY, a minor,

     Plaintiff,

v.

CELEBRATION CRUISE OPERATOR, INC., a foreign
corporation, CELEBRATION CRUISE LINE, LLC, a
Florida limited liability company, and
CELEBRATION CRUISE LINE MANAGEMENT, LLC, a
Florida limited liability company,

     Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, sues Defendants, and states:

### Jurisdiction and Venue

1. This Court has maritime jurisdiction under 28 U.S.C. § 1333(1) because Plaintiff's claims arose on navigable waters.

2. Venue is proper in the Fort Lauderdale Division of the Southern District of Florida because:

    a. Defendants conducted and continue to conduct business within the Fort Lauderdale Division of the Southern District of Florida;

b. Defendants and Plaintiff agreed to litigate this dispute in the Fort Lauderdale Division of the Southern District of Florida.

## Conditions Precedent

3.  Plaintiff has satisfied all conditions precedent (including but not limited to pre-suit notice of the claims made herein) or they are waived.

## Parties and Facts

4.  Plaintiff is a Florida citizen over the age of eighteen, and the parent and natural guardian of Ashley Zilinsky, a minor ("Minor").

5.  Minor is a Florida citizen.

6.  Defendant, Celebration Cruise Operator, Inc. ("Operator") is a Bahamian corporation conducting business in the Southern District of Florida.

7.  Defendant, Celebration Cruise Line, LLC ("Line") is a Florida limited liability company conducting business in the Southern District of Florida.

8.  Defendant, Celebration Cruise Line Management, LLC ("Management") is a Florida limited liability company conducting business in the Southern District of Florida.

9.  At all material times, Defendants conducted a shipping, transportation, and cruise line/common

carrier business from Port Everglades in Broward County, Florida.

10. At all material times, Operator operated, owned, owned *pro hac vice*, possessed, managed, and/or controlled the vessel, *Bahamas Celebration*, ("the vessel") in foreign and local commerce.

11. Alternatively at all material times, Line operated, owned, owned *pro hac vice*, possessed, managed, and/or controlled the vessel in foreign and local commerce.

12. Alternatively at all material times, Management operated, owned, owned *pro hac vice*, possessed, managed, and/or controlled the vessel in foreign and local commerce.

13. Upon information and belief, the vessel bears IMO Number 7904891 and is a Bahamian flagged vessel.

14. At all material times, Plaintiff and Minor were ticketed passengers lawfully on the vessel.

15. Exhibit A is a copy of the Cruise Ticket Contract.

### COUNT 1

### NEGLIGENCE AGAINST OPERATOR

16. Plaintiff incorporates paragraphs 1-15.

17. "Defendant" refers to the party identified in this Count's heading.

18.  At material times, Defendant owed Minor a duty to exercise reasonable care under the circumstances in its design, maintenance, and operation of the vessel.

19.  On or about August 15, 2009, Defendant breached its duty to Minor and was negligent in these non-exclusive ways:

   a. Allowing the unsafe condition of an unsecured/slippery portion of deck covering to exist in an area where Minor walked;

   b. Failing to adequately warn Minor of the dangers associated with the unsecured/slippery portion of deck covering;

   c. Negligently designing the vessel so that areas of the deck where Minor walked became unsecured/slippery;

   d. Engaging in a negligent mode of operation whereby Defendant failed to properly monitor and maintain areas where Minor walked that resulted in unreasonably dangerous and unsecured/slippery portion of deck; and

   e. Failing to maintain the vessel in a reasonably safe condition under the circumstances whereby Defendant allowed the deck to become unreasonably dangerous and unsecured/slippery.

    f. Failing to properly inspect the deck of the vessel when such inspections would have revealed the dangers associated with the unsecured/slippery deck;

20. The previously described conditions were known to Defendant or had existed for a sufficient period of time so that Defendant should have discovered them in the exercise of due care.

21. Alternatively, Defendant created the dangerous conditions.

22. Defendant's conduct created a foreseeable zone of risk posing a general threat of harm to Minor.

23. As a direct and proximate result of Defendant's negligence, Minor lost her footing, fell, and suffered bodily injury, resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical nursing care and treatment, aggravation of pre-existing condition(s). Minor's injuries are permanent, or continuing, and based on a reasonable degree of medical certainty, Minor will suffer the losses in the future.

24. Solely because of Defendant's negligence, Minor and Plaintiff were wrongfully deprived of the pleasures and joys of the complete vacation trip, and a claim is

hereby made for the return of all passenger money, or in this case, the full monetary value of the cruise ticket, and for such further consequential damages as the Court may find proper and just under the circumstances.

**WHEREFORE,** Plaintiff prays for:

    a. Judgment for damages against Defendant in an amount proven at trial;

    b. Cost of suit;

    c. Prejudgment interest where applicable;

    d. Jury trial.

## COUNT 2

### NEGLIGENCE AGAINST LINE

25.  Plaintiff incorporates paragraphs 1-15.

26.  "Defendant" refers to the party identified in this Count's heading.

27.  At material times, Defendant owed Minor a duty to exercise reasonable care under the circumstances in its design, maintenance, and operation of the vessel.

28.  On or about August 15, 2009, Defendant breached its duty to Minor and was negligent in these non-exclusive ways:

a. Allowing the unsafe condition of an unsecured/slippery portion of deck covering to exist in an area where Minor walked;

b. Failing to adequately warn Minor of the dangers associated with the unsecured/slippery portion of deck covering;

c. Negligently designing the vessel so that areas of the deck where Minor walked became unsecured/slippery;

d. Engaging in a negligent mode of operation whereby Defendant failed to properly monitor and maintain areas where Minor walked that resulted in unreasonably dangerous and unsecured/slippery portion of deck; and

e. Failing to maintain the vessel in a reasonably safe condition under the circumstances whereby Defendant allowed the deck to become unreasonably dangerous and unsecured/slippery.

f. Failing to properly inspect the deck of the vessel when such inspections would have revealed the dangers associated with the unsecured/slippery deck;

29. The previously described conditions were known to Defendant or had existed for a sufficient period of time so that Defendant should have discovered them in the exercise of due care.

30. Alternatively, Defendant created the dangerous conditions.

31. Defendant's conduct created a foreseeable zone of risk posing a general threat of harm to Minor.

32. As a direct and proximate result of Defendant's negligence, Minor lost her footing, fell, and suffered bodily injury, resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical nursing care and treatment, aggravation of pre-existing condition(s). Minor's injuries are permanent, or continuing, and based on a reasonable degree of medical certainty, Minor will suffer the losses in the future.

33. Solely because of Defendant's negligence, Minor and Plaintiff were wrongfully deprived of the pleasures and joys of the complete vacation trip, and a claim is hereby made for the return of all passenger money, or in this case, the full monetary value of the cruise ticket, and for such further consequential damages as the Court may find proper and just under the circumstances.

**WHEREFORE,** Plaintiff prays for:

 a. Judgment for damages against Defendant in an amount proven at trial;

 b. Cost of suit;

 c. Prejudgment interest where applicable;

 d. Jury trial.

## COUNT 3

### NEGLIGENCE AGAINST MANAGEMENT

34. Plaintiff incorporates paragraphs 1-15.

35. "Defendant" refers to the party identified in this Count's heading.

36. At material times, Defendant owed Minor a duty to exercise reasonable care under the circumstances in its design, maintenance, and operation of the vessel.

37. On or about August 15, 2009, Defendant breached its duty to Minor and was negligent in these non-exclusive ways:

 a. Allowing the unsafe condition of an unsecured/slippery portion of deck covering to exist in an area where Minor walked;

 b. Failing to adequately warn Minor of the dangers associated with the unsecured/slippery portion of deck covering;

c. Negligently designing the vessel so that areas of the deck where Minor walked became unsecured/slippery;

d. Engaging in a negligent mode of operation whereby Defendant failed to properly monitor and maintain areas where Minor walked that resulted in unreasonably dangerous and unsecured/slippery portion of deck; and

e. Failing to maintain the vessel in a reasonably safe condition under the circumstances whereby Defendant allowed the deck to become unreasonably dangerous and unsecured/slippery.

f. Failing to properly inspect the deck of the vessel when such inspections would have revealed the dangers associated with the unsecured/slippery deck;

38. The previously described conditions were known to Defendant or had existed for a sufficient period of time so that Defendant should have discovered them in the exercise of due care.

39. Alternatively, Defendant created the dangerous conditions.

40. Defendant's conduct created a foreseeable zone of risk posing a general threat of harm to Minor.

41. As a direct and proximate result of Defendant's negligence, Minor lost her footing, fell, and suffered

bodily injury, resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical nursing care and treatment, aggravation of pre-existing condition(s). Minor's injuries are permanent, or continuing, and based on a reasonable degree of medical certainty, Minor will suffer the losses in the future.

42. Solely because of Defendant's negligence, Minor and Plaintiff were wrongfully deprived of the pleasures and joys of the complete vacation trip, and a claim is hereby made for the return of all passenger money, or in this case, the full monetary value of the cruise ticket, and for such further consequential damages as the Court may find proper and just under the circumstances.

**WHEREFORE**, Plaintiff prays for:

a. Judgment for damages against Defendant in an amount proven at trial;

b. Cost of suit;

c. Prejudgment interest where applicable;

d. Jury trial.

By: _____
Ben Murphey, Esq.  (FBN 25489)
LAWLOR WINSTON, LLP
2211 Davie Blvd.
Ft. Lauderdale, FL 33312
954-525-2345
954-730-8908 fax
bmurphey@lawlorwinston.com
www.lawlorwinston.com

## CRUISE TICKET CONTRACT

### IMPORTANT NOTICE OF GUESTS
**YOUR CRUISE TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS. IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT WITH PARTICULAR ATTENTION TO PARAGRAPHS 4, 6, 12 AND 15, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE AND RETAIN IT FOR FUTURE REFERENCE.**

CONTRACT OF PASSAGE Passengers are advised to read the terms and conditions of the passenger contract ticket set forth below.

(1) This ticket constitutes a contract of passage between the carrier, as defined in paragraph 23, and the passenger (whether or not signed by or on his behalf) and all the terms and provisions of both sides of this ticket, including all of the following matter printed below are a part of such contract of which the passenger and/or purchaser agrees by accepting this ticket, both on his own behalf and also on behalf of any other person or persons for whom this ticket is purchased as his, her or their agent. The fare includes transportation as specified herein: full board, ordinary ship's food, but no spirits, wine, beer or mineral waters. This contract supersedes all representations or conditions contained in carrier's advertisement, notices, brochures or other literature and all promises and agreements made or claimed to have been made with the passenger or anyone representing him.

(2) This ticket is valid only for the person or persons named on the front hereof for whom it is issued and cannot be transferred without carrier's consent. Passage money shall be considered earned at the time of payment, or if not previously paid, then at the time of embarkation. Carrier shall be entitled to such passage money and to retain it under all circumstances whatsoever. Carrier shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partially not used by a passenger, any statute or other governmental regulations to the contrary notwithstanding, the benefit of which passenger hereby expressly waives. Carrier reserves the right to cancel any scheduled call at any port for any reason at its option at any time whether before, or after sailing of the vessel, without previous notice to the passenger, and without liability to the passenger for any loss, damage or delay whatsoever, howsoever consequential thereon.

(3) Passenger is not allowed to bring onboard without previous written permission of the carrier any intoxicating liquors or beverages and no firearms or explosive substances, contraband, illegal items or any goods of a dangerous nature, nor dogs, cats, birds or other animals of any kind and description.

(4) Carrier's responsibility shall never exceed the usual amount of limitation of liability to which carrier is entitled under the applicable law. No undertaking or warranty is given or shall be implied as to the seaworthiness, fitness, or condition of the vessel or any food, drink, or medicine supplied onboard the vessel. In no event shall carrier be liable for any accident which occurs off the vessel itself, including, but not limited to accidents occurring ashore, on tenders not owned by the vessel, or a part of the vessel's equipment or upon docks or piers. The exemption from

2.18.09



liability herein contained shall extend to each of the employees, officers, agents, servants and all representatives of the carrier.

The carrier shall in no event be liable to the passenger in respect to occurrences happening off the vessel itself. In selling tickets, coupons or vouchers or making arrangements for shore excursions, the carrier acts only as agent for others who operate such services and all person accepting or using tickets or authorizations in any form for such services shall thereby be deemed to agree and consent that the carrier shall not be or become liable for any acts or omissions pertaining to such services or for any loss, injury or damage to any person or property arising therefrom or in connection therewith. All arrangements made for or by the passenger for shoreside excursion, transportation or activities have been made solely for the passenger's convenience and are at the passenger's risk.

(5) The passenger admits a full understanding of the nature and character of the vessel and assumes all risks of travel, transportation and handling of passengers and baggage. The vessel may or may not carry a ship's physician at the election of the carrier, and if medical personnel are carried, it is agreed that they are not agents, servants or employees of the carrier but are independent contractors and the carrier shall not be liable for the consequences of any examination, advice, diagnosis, medication, treatment, prognosis or other professional service which such medical personnel may furnish or fail to furnish any passenger. The passenger agrees to pay charges for all medical care requested or required, whether onboard or ashore, and to indemnify the carrier in the event the carrier pays the cost of any medical care including transportation thereof. The carrier is not obligated to make such payments. The passenger assumes the risk of and agrees that the carrier shall not be liable for (a) injury, death or delay of or to the passenger or (b) loss, damage or delay to the passenger's baggage, effect or property arising from, caused, or in the judgment of the carrier or master rendered necessary or advisable by reason of any act of God or public enemies, arrest, restraints of princes, rulers or people, piracy, war, revolution, extortion, hijacking, bombing, threatened or actual rebellion, insurrection, civil strife, fire, explosion, collision, stranding, grounding, perils of the sea, rivers, canals, locks or other waters, perils of navigation of any kind, lack of water or passageway in canals, theft, accident to or from machinery, boilers or latent defects even though existing at embarkation or commencement of voyages, barratry, desertion or revolt of crew, seizure of ship by legal process, strike, lockout or labor disturbances whatsoever, whether or not such strike, lockout or labor disturbances results from a dispute between the carrier and its employees or between other parties, whether or not of like or of similar character to the foregoing.

(6) Each passenger will be allowed 2 pieces of baggage free of charge. Any excess will be charged at the current rate for baggage, payable before embarkation, subject to the right of the carrier to limit the amount of such excess that may be carried. Whenever the term "baggage" is used herein, it shall mean only suitcases, valises, satchels, bags, hangers or bundles and their contents consisting of such wearing apparel, articles of a personal adornment, toilet articles and similar personal effects as are necessary and appropriate for the purpose of the cruise and all other such personal property of the passenger not in a container. No tools of trade, household goods, presents and/or property of others, jewelry, precious metals, money documents, negotiable instruments, valuables of any description or such articles specified in 46 U.S. Code, Appendix Section 181 shall be carried except under and subject to the terms of a special written contract entered into with the carrier before embarkation upon application of the passenger. The passenger hereby warrants that no such articles are contained in any receptacle or container

2.18.09

presented by him as a baggage hereunder, and if such articles are shipped by passenger as baggage in breach of this warranty, no liability thereof shall attach to the carrier on account thereof as carrier, bailee or in any other capacity. The ship's officers have the right to enter and search your stateroom and baggage for any hazardous, controlled or prohibited substances or contraband. It is stipulated that the aggregate value of the passengers baggage under this ticket does not exceed $300.00 and any liability of the carrier for any cause whatsoever with respect to said baggage shall not exceed such sum unless the passenger shall in writing specify its true value and pay to the carrier before embarkation 5% on the excess of such value, in which case the carrier's liability shall be limited to the actual damage sustained to, but not exceeding such specified value or a maximum of $5,000.00. Please lock all luggage when not in your immediate possession. Carrier shall not be liable for loss of, or damage to, jewelry, cash, liquor parcels, photographic/electronic equipment, lifesaving medications/prescriptions, medical equipment, ladies train cases/cosmetic bags/small carry-on luggage or other similar valuable items contained in the guest's baggage. Please do not place the above mentioned items with your luggage. We recommend these items be carried with you when boarding or disembarking the ship. No suit shall be maintainable against the carrier upon any claim in connection with this transportation or contract relating to baggage or any property unless loss or damage to baggage or property while boarding or disembarking is reported to either the Purser's Office or to carrier's personnel prior to leaving the U.S. Customs area. Passenger must file an Irregularity Report prior to leaving these areas. Carrier will not be responsible for any damage or loss which is not duly reported as stated above. In no event shall any suit for any cause against the carrier with respect to baggage or property be maintainable unless suit shall be commenced within six (6) months after termination of the voyage.

(7) If the vessel be prevented for any reason whatsoever, including fault of carrier, from sailing on or about the scheduled or advertised day, carrier shall have liberty to substitute any other vessel whether owned or operated by it and to reberth passengers thereon, or at carrier's option to make refund of passage money paid.

(8) Carrier shall have full liberty to proceed without pilots and tow and to assist vessels in all situations, to deviate from the direct or customary course in the interest of passengers or of the vessel, or to save life or property; to put in at any unscheduled or unadvertised port; to omit or delay landing at any scheduled or advertised port; to put back to port of embarkation or to any port previously visited if carrier shall deem prudent, all without incurring any liability to the passenger on account thereof.

(9) The carrier has an absolute right to transfer passenger and/or his baggage to other carriers, whether by water, motor vehicle, rail or air, to or toward the ultimate destination. In the even such substituted passage is for the convenience of the carrier, it shall be at the carrier's cost. Otherwise it shall be at the cost of the passenger.

(10) In making any arrangements for the care or transportation of any passenger or his or her baggage by any connecting or other carrier, railway, vessel, craft, transportation company, tramway, carriage, automobile, aircraft or otherwise than by carrier's ships or such tenders as are supplied at the sole expense of carrier to embark or disembark passengers in and from the same, or in making any arrangements for shore accommodations, victualing, amusement or entertainment for any passenger or for any other service or facility whatsoever for any passenger otherwise than aboard carrier's ships or such tenders aforesaid, it is understood and agreed that carrier is acting in the capacity of agent for the party or parties actually providing such care,

2.18.09

transportation, accommodation, victualing, amusement, entertainment, service or facility aforesaid, and that the same are provided subject to the terms appearing in the tickets, vouchers, or notices for the time being in force of such party or parties or otherwise imposed by such party or parties. It is further understood and agreed that carrier is not to be, or to be held, liable for the act, neglect, default or omission of any party whomsoever in respect of any events, matters or things, whatsoever or wheresoever, elsewhere than aboard the carrier's ships or such tenders as are supplied at the sole expense of carrier for the purpose of embarking or disembarking passengers in or from carrier's ships.

(11) Any taxes and stamps on tickets and taxes or fines on passenger, embarkation expense, and all expenses of such a nature are to be paid by passenger. In case of quarantine, each passenger must himself bear all risks and expenses caused thereby and will be charged thereby and will be charged for maintenance, payable day by day if maintained onboard the vessel for such period of quarantine. Passenger assumes all risks and losses occasioned by delay or detention howsoever arising. Costs connected with embarkation or debarkation of passengers and/or baggage and costs of transfer between vessel and shore must be borne by the passenger.

(12) **No suit shall be maintainable against the carrier for personal injury, illness or death of passenger unless written notice of the claim, with full particulars is delivered to the carrier or its agent's office (at the port of sailing or the port of termination) within six (6) months from the day of such personal injury, illness or death of the passenger. In no event shall any suit for any cause against the carrier with respect to personal injury, illness or death for any reason be maintainable, unless suit is commenced (filed) within one (1) year from the date of personal injury, illness or death and process is served with 120 days after filing notwithstanding any provision of law of any state or country to the contrary.**

**No suit shall be maintainable against the carrier for any non-injury, illness or death claims, including claims based on contract, tort, statutory, constitutional or other legal rights, including but not limited to alleged violation of civil rights, discrimination, consumer or privacy laws, or for any losses, damages or expenses, related to or in any way arising out of or connected with this contract or the cruise shall be maintainable against the carrier unless written notice of the claim, with full particulars, is delivered to the carrier or its agent's office (at the port of sailing or the port of termination) within thirty (30) days after termination of the cruise to which this contract relates. In no event shall any such suit be maintainable unless suit is commenced (filed) within six (6) months after the termination of the cruise and process served within sixty (60) days after filing, notwithstanding any provision of law of any state or country to the contrary.**

**It is agreed by and between the passenger and the carrier that all disputes and matters whatsoever arising under, in connection with, or incident to this contract shall be litigated, if at all, in and before the United States District Court for the Southern District of Florida in Broward County, Florida, U.S.A. (or as to those lawsuits for which the Federal Courts of the United States lack subject matter jurisdiction before a Court located in Broward County, Florida, USA) to the exclusion of the courts of any other state, territory or country or elsewhere in the State of Florida. Passenger consents to jurisdiction and waives any venue or other objection that he may have to any such action or proceeding being brought in the applicable court located in Broward County, Florida.**

(13) This contract is not available for persons who in carrier's judgment may be refused admission into a port of landing or into the country of their destination or for persons who may

2.18.09

be suffering from a contagious disease or who for any other cause may endanger themselves, or others or be or become obnoxious to others. Carrier reserves the right to refuse or revoke passage to such person or persons and upon refunding the amount paid hereon or the prorata portion thereof, as the case may be, after deduction of expenses incurred by carrier on account of such person or persons, carrier shall be discharged from all further liability. A medical certificate certifying fitness for travel may be required of any passenger at carrier's request to assess whether that passenger's participation would result in a threat to the health or safety of others. Any disability or condition requiring special attention or treatment must be reported to the carrier when reservation is being requested so that the carrier may assess what reasonable accommodations may be made, if any, that would not create an undue hardship on the carrier. Application for passage from an expectant mother must be accompanied by a medical certificate establishing her fitness for travel. Carrier reserves the right to refuse passage to women in advanced stages of pregnancy. Any passenger who enter the twenty-fourth week of pregnancy by the beginning of the cruise agrees not to book the cruise or board the vessel. Handicapped persons are advised that certain international safety requirements and U.S. Coast guard regulations may cause difficulty for mobility impaired person or persons with severely impaired sight and/or hearing. For reasons of passenger safety and well-being, carrier may require such persons to be accompanied by, and share the same cabin with, an adult who is not physically impaired as aforesaid. Carrier reserves the right to refuse or revoke passage to anyone who is in the sole judgment of the carrier, and based on an individualized assessment is in such physical or mental condition as to be unfit for travel, or who may require care, treatment and attention beyond that which is available aboard the vessel. If you become unfit to travel for any reason during the cruise and/or disembark early, the carrier shall not be liable for any refund or damages.

(14) All berths are let on condition that passengers may be transferred (except where a whole cabin is specially engaged) from one cabin to another if required to accommodate passengers. Such transfer will be made into cabins as similar as practicable. All unoccupied berths are liable to be let at intermediate ports.

(15) **In addition to all of the restrictions upon and exemptions of liability provided by this contract, carrier shall have benefit of any limitation of liability or exoneration of liability statue available in the applicable forum, including but not limited to 46 U.S. Code Paragraph 30501 through 30509 and 30511, and the International Convention Relating to Limitation of the Liability of Seagoing Ships 1957 (the Brussels Convention).**

(16) The price of passage hereunder has been fixed partly with reference to the liability assumed by carrier as defined by this contract, and no agreement alteration or amendment creating any other or different obligation or liability shall be valid unless made in writing and signed by carrier's authorized corporate officer at the port of embarkation.

(17) The passenger certifies to the carrier that he is qualified to enter the country or countries of his destination and is qualified to enter the country or countries at which he may wish to disembark. The passenger assumes all responsibility for obtaining all travel and health documents required by any governmental authority, and if he fails to do so and such failure may delay the vessel or may be deemed a violation of any law, rule order or direction of any governmental authority, carrier shall have no further obligation to transport or to furnish transportation to the passenger. You will not be allowed to board the ship or be entitled to a refund if you do not have proper documentation. Passengers will be subject to any fine or other

2.18.09

costs incurred by carrier which result from improper documentation or noncompliance with applicable regulations, which amount may be charged to your stateroom and/or credit card.

(18) Passengers will not be liable to pay or entitled to receive any general average contribution in respect to property taken with them on the vessel.

(19) If the vessel carries a surgeon, physician, barber, hair dresser, manicurist, masseuse or any individual providing personal services, it is done solely for the convenience of the passenger and any such person dealing with the passenger is not and shall not be considered in any respect whatsoever as the employee, servant or agent of the carrier, and the carrier shall not be liable for any act of omission of such person or those under his orders or assisting him with respect to treatment, advice or care of any kind given to any passenger. Each such person shall be entitled to make a proper charge for any service performed with the respect to a passenger and the carrier shall not be concerned otherwise in any way whatsoever in any such arrangement.

(20) Should any provision of this contract be contrary to or invalid by virtue of the law of any jurisdiction in which this contract is attempted to be enforced, or for any other reason, said provision is deemed to be severed from this contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

(21) The passenger, or if a minor, his parent or guardian, shall be liable to and shall reimburse carrier for all damage to the vessel and its furnishing and equipment or any property of the carrier, caused directly or indirectly, in whole or in part, by any act or omission of the passenger, whether willful or negligent. The passenger shall further indemnify the carrier and vessel and each and all of their agents and servants against all liability whatsoever which the carrier or the vessel or such agents or servants may incur towards any person or company or government for any personal injury or death or damage to property caused directly or indirectly in whole or in part by any willful or negligent act of omission on the part of the passenger. The passenger furthermore be liable to and shall indemnify the carrier and/or the vessel and/or the master for any fines or penalties imposed on the vessel by the authorities for this failure to observe or comply with local requirements in respect of immigration, repatriation, customs and excise taxes or any other government regulations whatsoever.

(22) If this contract is issued for, or in connection with, any passage at a reduced rate from the full regular fare ordinarily charged therefore, and whether the reduction is in connection with an "Off Season" or "Low Season" sailing or at any reduced rate by whatsoever designation or cause, this contract ticket is only available for use on the sailing for which issued unless upon carrier's determination that available space exists, the passenger pays to carrier the difference between the reduced rate and the full regular fare.

(23) Whenever the term "carrier" is used herein, it shall mean and include the vessel and its tenders and their owners, operators, charterers, and independent contractors, (including in particular caterers, concessionaires, and/or agents). The master, agents, brokers, officers and crew of the vessel and of the carrier shall have the benefit of all the terms and conditions of this contract. The term "passenger" shall include the plural where appropriate and all persons engaging in and/or traveling under this contract. The masculine includes the female.

(24) Carrier reserves the right to increase fares without prior notice. In such an event passenger has the option to accept and pay such increase, or to cancel passenger's reservation without penalty, not less than one month prior to departure.

(25) Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel, including, but not limited to, passenger's

2.18.09

usage of any paddle ball, gymnasium, jogging, swimming, diving, health club and sauna facilities, and by utilizing such facilities, passenger agrees to assume all risk and does hereby fully release and discharge carrier from any and all claims, demands, damages, causes of action present or future, whether the same be known anticipated or unanticipated, resulting from or arising out of passenger's use or intended use of said facilities.

(26) Unless negligent, carrier is not responsible nor liable for any loss or damage to passenger's property on the vessel. Liability for loss of or damage to passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.

(27) All arrangements made for or by passenger for transportation (other than the subject cruise), including air, shore excursions, ground tours, ground transportation, hotels, restaurants and other transportation, activities or services are made solely for passenger's convenience and are at passenger's risk. The providers of such services are independent contractors and are not acting as agents or representatives of carrier. In no event shall carrier be liable for any loss, delay, disappointment, damage, injury illness, death or other harm whatsoever to passenger which occurs on or off the vessel or as a result of any acts, omissions or negligence of any independent contractors.

(28) Carrier shall have the right to comply with any orders, recommendations, or directions whatsoever given by any governmental entity or by persons purporting to act with such authority and such compliance shall not be deemed to be a breach of this contract.

(29) Refunds for passenger cancellations prior to sailing are limited by the terms of the carrier's refund policy. Passengers are advised to consult the carrier's cruise brochure for the terms of the carrier's refund policy.

(30) Passenger warrants that he and those traveling with him are fit for travel and that such traveling will not endanger themselves or others. Carrier reserves the right to terminate a passenger's cruise at any time, at the risk and expense of the passenger disembarked, when in the opinion of carrier, passenger is considered to be a danger to himself or a disturbance or danger to others.

(31) Carrier shall not be required to refund any portion of the fare paid by any passenger who fails, for any reason to be onboard the vessel at least one half hour prior to the vessel's departure from the port of embarkation or any port of call and shall not be responsible for lodging, meals, transportation or other expenses incurred by passenger as a result thereof and carrier shall have the right to reassign/resell any such cabin. Carrier shall have no obligation to any passenger to deviate from any scheduled sailing or port of call.

(32) Carrier has the exclusive right to include photographic, video and other visual portrayals of passenger in any pictorial medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to passenger, and all rights, title and interest therein (including all copyrights therein) shall be carrier's sole property, free from any claims by passenger or any person deriving any rights or interest from passenger.

(33) Prior to disembarking the ship, you must pay in full all amounts charged to your stateroom account. Carrier shall not be liable for loss, damage or delay resulting from your failure to comply with these requirements. Carrier shall be entitled to a lien on the passenger's baggage for any outstanding amounts.

2.18.09

(34) Passenger acknowledges and confirms that any travel agent utilized by passenger in connection with the issuance of this ticket is, for all purposes, passenger's agent and carrier shall not be liable for any representation made by said travel agent.

(35) This contract supersedes all representations, promises and agreements whatsoever made or claimed to have been made to the passenger or anyone representing him.

(36) Celebration Cruise Operator, Inc., 2419 E. Commercial Blvd., Fort Lauderdale, FL 33308 is the operator of the vessel and the issuer of this Cruise Ticket Contract.

2.18.09